McLaughlin, et al. *v*. List.

[Kentucky Law Reporter, Vol. 5—291.]

**Priority Over Homestead Claim.**

Where one has a lien superior to a homestead lien and the property is sold at judicial sale for a sum sufficient to satisfy both liens, the lienholder waives his right to have executed to him the pur-

chaser's sale bonds, the homestead claimant takes a bond for $1,000 and the holder of the superior lien takes a mortgage from the purchaser, the purchaser and his bondsmen become insolvent so the homestead claimant's bond can not be collected, and the property is again sold on foreclosure of the lienholder's mortgage for just enough to pay the mortgage and costs,—under these facts it is held that the mortgage· lienholder, having refused to accept the purchaser's bonds on the first sale, elected to rely upon his mortgage, and the homestead claimant's lien of $1,000 was prior to the mortgage lien.

## APPEAL FROM KENTON CHANCERY COURT.

October 12, 1883.

OPINION BY JUDGE PRYOR:

The appellee, List, Howard and others held liens on the Clinton house in Covington to secure the payment of certain debts owing them by the appellant, McLaughlin. The property, under a proper proceeding in equity, was sold to satisfy the various liens, and purchased by Bly & Bro. for $28,000. The property being indivisible the whole was sold, and satisfied not only the lien debts, but realized a sum sufficient to secure the homestead or its value claimed by McLaughlin. The commissioner was directed to take bonds from the purchasers to satisfy the several liens, and a bond to McLaughlin for $1,000, the value of his homestead. The bonds were executed for the amount due Howard, who had a vendor's lien, and to McLaughlin for the $1,000.

List, who was secured by mortgage and whose lien was inferior to that of Howard, declined to have any bond executed to him for the purchase-money to which he was entitled, but made an arrangement with Bly & Bro. by which they executed to him their notes payable in one, two, three, four and five years, the interest to be paid semi-annually, for the amount due him, and took from them a mortgage on the entire property to secure these notes, reciting in the mortgage "that his lien is hereby continued, and not in any manner intended to be relinquished." The purchasers, Bly & Bro., were nonresidents, and before the action under which the sale was made was finally disposed of the surety on the purchase-money bonds to Howard and McLaughlin became insolvent.

The rule to pay the money proving ineffectual and, perhaps, never

issued, McLaughlin and wife filed their petition, which was consolidated with the original action, asking that the property be sold to satisfy their lien for the homestead right evidenced by the bond executed by the purchasers as directed by the court. Howard and List were before the court asserting their claims, List, the appellee, asking that the second mortgage be enforced, and maintaining that the original lien created by the first mortgage and the sale under it went into the second mortgage, or, in other words, that he had never waived the priority he had over the homestead claim by reason of the first mortgage, in which the wife of McLaughlin relinquished all right of homestead.

A judgment was rendered in the consolidated causes, and a resale was ordered by the chancellor without determining the question of priority. List, the appellee, became the purchaser at the last sale, for about $11,000, a sum sufficient to pay off Howard and McLaughlin but not sufficient to pay List. List executed bonds for the purchase-money and, by an order of court subsequently made, was allowed to pay off the bonds before maturity, and the commissioner was ordered to distribute according to the former order of court. There never was any order of distribution made in the consolidated causes, nor did it appear that the commissioner had any money in his hands. Howard, it seems, was paid, his being a vendor's lien, and the bonds of List canceled and a conveyance made to him of the property. It does not appear that the parties were in court objecting to the orders or the mode of distribution, and if they are to be presumed to have knowledge of the orders made McLaughlin appeared in court and moved to set the orders aside, but the court overruled his motion and he has appealed. The bonds of List were canceled after the payment to Howard, upon the idea that he was then entitled to the whole of the purchase-money, there not being enough to pay McLaughlin.

It is insisted that the orders of distribution were not final, and no appeal can be taken from them. If not final the motion to set the orders aside could be entertained, and the failure to do so gave the right of appeal, because the effect of the orders made was to distribute the fund. This was final and all that remained to be done; and it was unnecessary, in our opinion, to make the motion to set the orders aside, or to except to the final judgment. The only question is, Did the appellee lose priority over the homestead claim by reason

of the acceptance of the mortgage and the execution of the notes to him by Bly & Bro.?

The original debt was due by McLaughlin to List. The latter had sold McLaughlin's property, and by the purchase the debt due to him by McLaughlin was satisfied. He owed List nothing. Bly Bros. became the debtors instead of McLaughlin and List had to look alone to Bly & Bro. or to the chancellor to enforce his claim. When the chancellor sold, if there had been a deficit of purchase-money the priorities would have been: 1. Howard, the vendor. 2. List, the mortgagee. 3. McLaughlin, the owner of the homestead. But here it was sufficient for a sum sufficient to satisfy all.

List declined to accept the tenure upon which the sale was made by the chancellor, and, instead of requiring the execution of bonds for the purchase-money for his interest, expressly waived that right and entered into a new contract with Bly & Bro., by which he accepted a second mortgage and gave to them, as purchasers, one, two, three, four and five years in which to pay his debt, and attempted by the stipulations of the second mortgage to retain a lien that he once had to secure these deferred payments. This he might do as between himself and the debtor, but the rights of third parties are to be affected by it; and when the chancellor is asked to enforce the collection of the purchase-money he is informed that so far as Howard and McLaughlin are concerned the commissioner has followed the mandate of the court, but that List has extended the payments of what is due him for five years, and executed no bond as directed by the court, and it is now urged that the chancellor, before paying McLaughlin, must adjudge that the lien of List still has priority.

The property sold for $28,000, and by the terms of sale the purchaser was to give bond, with surety, for the entire amount. The purchasers may have been able to give security for the $4,000 due Howard and McLaughlin, and unable to give security for the entire sum, and this doubtless induced List to extend the time of payment and take the second mortgage. But for this security could have been required for all, and for a sum the commissioner could, and doubtless would, have required other sureties than those taken for a part of the purchase-money. If the security could not have been furnished a release would have been made at the time, or again or-

dered without such a delay as has caused a decline of the property in this case from $28,000 to $11,000.

The appellee is setting up two distinct liens. One, as he maintains, was retained by the chancellor, who was the vendor, and the other by reason of the mortgage to secure the deferred payments. While such liens might exist as between the parties, it is difficult to perceive where the lien of the chancellor exists when the creditor by his own act has rendered him powerless to enforce it. He has no bond before him executed by the purchaser to the commissioner for the debt of appellee, but finds with the second mortgage the notes payable in one, two, three, four and five years, and is asked to foreclose a second mortgage executed by a different debtor to satisfy a claim against McLaughlin that was satisfied in full by the sale in the original action. As the case stands Howard and McLaughlin could have applied for the rule against the purchaser to pay the money into court; and conceding, for the purpose of illustrating the principle recognized, that they had received upon the rule the entire amount of their bonds, and the appellee who had, as he maintains, the prior claim in the first intsance, appeared in court, maintaining that the purchaser and his surety were insolvent, and asking that Howard and McLaughlin be compelled to refund, either in whole or the prorata portion to which appellee was entitled, will it be seriously argued that the chancellor, with the facts before him as to the contract between List and the purchaser, would require them to refund or pay back the money? In this case, the appellee voluntarily declined to have the commissioner take bonds for his debt, and while perfectly secure, relieves the chancellor of any further control of the fund by executing a contract upon a consideration that will authorize it to be enforced, but not at the expense of those who are in no manner parties to it. What interest did appellee have in the sale made by the commissioner? He had no bond for his debt, and when applied to for a rule the stipulations of the last mortgage and the condition of the notes would be a complete response. The appellee in this proceeding (the new action) is asserting a debt against Bly & Bro., and not against McLaughlin, and as the record now appears the chancellor should have set the orders aside and required appellee to pay to McLaughlin the amount of his bond.

Judgment *reversed* and cause remanded for further proceedings consistent with this opinion.

*J. G. Carlisle, W. W. Cleary, for appellants.*
*J. H. & C. H. Fisk, for appellee.*